FILED
 2016 Aug-26  PM 02:32
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **PAMELA LUCRETIA TACKETT,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 3:15-CV-01654-RDP |
| | } |
| **CAROLYN W. COLVIN,** | } |
| **Acting Commissioner, Social Security** | } |
| **Administration,** | } |
| | } |
| Defendant. | |

## MEMORANDUM OF DECISION

Plaintiff Pamela Tackett brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See also*, 42 U.S.C. §§ 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be remanded.

**I.     Proceedings Below**

Plaintiff filed her application for disability and DIB on July 19, 2012, alleging a disability onset date of July 9, 2012. (Tr. 12). Plaintiff's claims were initially denied by the Social Security Administration on September 18, 2012. (*Id.*). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 2, 2012, received a hearing on May 9, 2013 and a supplemental hearing on January 10, 2014, and was denied DIB on February 7, 2014. (*Id.*). The ALJ determined that, contrary to her allegations, Plaintiff had not been under a disability as defined in the Act since July 9, 2012, the alleged onset date. (*Id.*). After the Appeals Council

denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (Tr. 1). 42 U.S.C. §§ 405(g) and 1383(c).

**II.    Facts**

At the time of the supplemental hearing, Plaintiff was thirty-nine years old. (Tr. 51). Plaintiff has a twelfth grade education and currently lives with her mother, husband, and two and a half year old daughter. (Tr. 29). In sum, Plaintiff alleges in her testimony that her three neck surgeries[1], degenerative disc disease, and concurrent neck and back pain interfere with her ability to function on a daily basis or engage in any substantial gainful activity. (Tr. 34, 55-83).

Plaintiff claims she hasn't been able to comfortably pick up her daughter since she was a newborn and requires family assistance in caring for her. (Tr. 29, 61). Her husband does the grocery shopping and most of the cooking, because she cannot stir or lift a skillet. (Tr. 30-31, 71-72). He also helps her wash her hair and clean the house. (Tr. 34, 72). However, Plaintiff is able to open doors, button her blouse, help her daughter dress, wash clothes, and prepare simple meals like frozen dinners and hotdogs. (Tr. 31, 35, 71-72, 74-75).

On a normal day, Plaintiff says her pain before her medication[2] is a ten on a ten point scale. (Tr. 37, 69) With medication, she ranks her pain as a seven or eight. (*Id*.). Plaintiff testified that her pain necessitates that she lie down for four to five hours in an eight-hour day. (Tr. 36, 68) She can only sit for about 15-20 minutes without having to move, and she can only stand for about 20 minutes, even if she props herself up with something. (Tr. 31, 67). Her pain prevents

---

[1] Plaintiff has had three neck surgeries in total. The first took place in 2006, the second in 2007, and the third in 2009. (Tr. 36, 63). Although the surgeries were successful, she claims she still has dull pain and potential nerve damage. (Tr. 63). Nevertheless, she continued working until July 2012, the date she says the pain became unmanageable. (Tr. 63-64).

[2] Plaintiff's medications include Vicodin, Hydrocodone, Ibuprofen, one muscle relaxer (three times a day), Optimal pain cream, and acid reflux medicine. (Tr. 37, 66). She is not able to take steroid injections, because she reacts adversely to them. (Tr. 69).

her from walking even half a city block. (Tr. 31, 68). Lastly, Plaintiff sleeps about 2-4 hours a night due to her discomfort. (Tr. 37, 70).

Plaintiff has past relevant work as a mobile home assembler. (Tr. 51). The last role she filled before she stopped working on July 9, 2012 was building doorframes and window frames. (Tr. 32, 65). Plaintiff testified at both hearings that she worked in this capacity for about 17 years until the pain from lifting and bending forced her to leave work. (Tr. 31, 64).

Dr. Morrow has treated Plaintiff for more than 5 years and has seen her 25-30 times in total. (Tr. 348; Pl.'s Mem. 16).[3] Over the course of her treatment, Plaintiff visited his office every one or two months and consistently made complaints of chronic pain. During her 2011 visits in May, August, and October, Plaintiff presented with back pain, joint pain, neck pain, and migraines. (Tr. 301, 302, 303). Her medications at this time included Reproxin, Phinergan, Omeprazole, Roboxin, Neurontin, and Lomstil. (Tr. 300).

During 2012, Plaintiff increased her visits to Dr. Morrow to about once a month, reporting headaches, migraines, and joint/back pain on each occasion. (Tr. 294-299).[4] She also complained of pain in her left wrist, knee pain, and numbness in her right hand. (Tr. 296-299). Dr. Morrow's neuro/musculoskeletal exams continued to reflect the joint, back, and neck pain that Plaintiff reported. (Tr. 294-299). Throughout 2012, Plaintiff's pain was consistently a 10 without medication and a 7-8 with medication. (Tr. 294-298).

On August 2, 2012, Dr. John Johnson, a neurosurgeon, examined Plaintiff based on a referral from Dr. Morrow. (Tr. 307-310). He reported to Dr. Morrow that Plaintiff "remains with some mild hyperreflexia in the upper and lower extremities." (Tr. 307). He noted "some

---

[3] Although Dr. Morrow had been treating Plaintiff for much longer, his records do not predate 2011 because they were lost in the April 2011 tornado. (Tr. 77-78).

[4] The court notes that on October 18, 2012 and November 18, 2012, Plaintiff reported a complaint about knee pain and an abnormal mammogram. (Tr. 342-343).

degenerative changes" in her lumbar spine MRI, while the MRI of her thoracic spine "showed a little bit of syrinx at T8-9 and a little bit of posterior disc bulging at L1-2 and T12-L1." (*Id.*). He further determined that surgical intervention wasn't necessary. (*Id.*). He also observed that Plaintiff's gait was unaffected, she had "no significant pain with internal or external rotation of her shoulders or hips" and a "decreased range of motion in neck flexion and extension as well as decreased range of motion in trunk flexion."

Plaintiff followed up with Dr. Johnson on February 26, 2013 complaining that her pain was "excruciating," she hurt "all the time," and her neck, shoulders, and back were tender. (Tr. 328). He again recommended nonsurgical treatment and monitoring. (Tr. 330). Plaintiff returned to Dr. Morrow on January 31, 2013, and he prescribed her Percocet to accommodate her worsening pain. (Tr. 340). Even with her new medication regimen, on March 21, 3013, Dr. Morrow stated that Plaintiff was "not able to work." (Tr. 339).

Dr. Morrow also gave a sworn statement on May 6, 2013, in which he explained the Functional Capacity Assessment (FCA) he completed on Plaintiff. (Tr. 348, 367).  In the FCA, he listed Plaintiff's diagnoses as follows: degenerative disc disease, cervical spine; post-cervical surgery x3; chronic pain syndrome; headache; and degenerative disc disease, lumbosacral spine. (*Id.*).  The FCA showed that during an 8-hour workday, Plaintiff could do the following: sit continuously for two hours; stand or walk continuously for one hour; she would need to lie down for about two to three hours to rest; and she would be expected to miss 50 days of work over the course of a year. (Tr. 348-349). Dr. Morrow also confirmed during his testimony that Plaintiff's complaints were "reasonably expected from the totality of her underlying medical conditions" and that her condition could be expected to worsen over time to the point of dysfunction. (Tr. 370-371).

Plaintiff also had two consultative examinations which were requested by the Social Security Administration. (Tr. 315-320, 39-50). The first was performed by Dr. Laura Lindsey on September 10, 2012. (Tr. 315). Plaintiff came to Dr. Lindsey complaining of degenerative disk disease, pain in her neck that causes weakness in her arms, and constant pain in her "entire back." (Tr. 316). She disclosed that she had herniated disks in her neck in that past, but she recently had an MRI that showed "herniated disks in her thoracic and lumbar spines." (*Id*.). Dr. Lindsey's diagnoses included "back pain, irritable bowel syndrome and arthritis." (Tr. 319). Dr. Lindsey opined that Plaintiff could "sit, stand, walk, hear, speak, carry, lift, and handle objects." (*Id*.). She also found that although Plaintiff's pain medication "would limit her ability in certain professions," she did "not appear limited by her medical problems." (*Id*.).

The second review was performed by Dr. Allan Neil Levine. While he did not personally examine Plaintiff, he reviewed Plaintiff's records and appeared at the supplemental hearing on January 10, 2014. (Tr. 39-50). During the hearing, Plaintiff confirmed that she had pain, tingling, numbness, and weakness in her extremities. (Tr. 40). She stated that she experiences numbness in the fingers of her left hand as well as a tingling sensation in her toes. (Tr. 41). Dr. Levine limited his opinions to the musculoskeletal system, and found the following medically determinable impairments: chronic neck pain; secondary, multi-level, degenerative disease; spondylosis, which is arthritis of the spine; and a small disc protrusion at the C3-4 level. (Tr. 42).[5] He also found four additional medically determinable impairments involving Plaintiff's back pain.[6]

---

[5] While Dr. Levine acknowledged Plaintiff's wrist fracture that she sustained on January 6, 2011 (Tr. 276-2810, he did not assign a medically determinable impairment to the wrist because Plaintiff seemed to have a normal range of motion and dexterity. (Tr. 42). He used the same approach in addressing Plaintiff's complaints of knee pain and similarly found no medically determinable impairment to the knee. (Tr. 45).

[6] Dr. Levine found the following additional impairments: "a status post-surgical discectomy infusion at the C4-5, C5-6, and C6-7 levels"; "chronic mid-back pain, secondary to thoracic spine degenerative disease, protruding

5

Despite these impairments, Dr. Levine disagreed with the limitations that Plaintiff's treating physician found necessary. He opined that in an 8-hour workday, Plaintiff could do the following: occasionally lift 15 pounds and frequently lift 10, but not above shoulder level; stand for 4 hours, but no longer than 40 minutes at a time without resting for a few minutes; sit for 6 hours with a sit/stand option; walk 2 out of 8 hours, but no longer than 40 minutes without resting for a few minutes; and occasionally kneel, crouch, stoop or bend. (Tr. 46-47). Dr. Levine also thought Plaintiff should avoid "repetitive or auditory motion of the neck or trunk, or thoracolumbar spine" and "forceful torque activities of the left hand." (Tr. 47).

Dr. Levine acknowledged that all of Dr. Morrow's treating records showed "either pain, muscle spasms, or both." (Tr. 48). He also agreed that the radiological findings provided "objective evidence of an underlying medical condition that could reasonably cause pain to an individual." (Tr. 49). In fact, he thought that all of Plaintiff's conditions could reasonably cause her pain. (*Id.*). Lastly, he found no evidence that Plaintiff was a malingerer. (Tr. 50).

### III.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

---

or hurting at disc at the T11-12 and T12-L1 levels" (Tr. 43); "chronic low back pain, secondary to multilevel lumbrosacral degenerative disc disease, bulging, or protruding discs at the L1-2, L2-3, L3-4, and L4-5 levels with a transitional vertebrae at the S1 level" (Tr. 44).; and "diffused pain and a diagnosis of chronic pain syndrome, which seems to be appropriate." (*Id.*).

6

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.*

Under the third step of this analysis, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ then determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).

In the final portion of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). The burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 9, 2012, the alleged onset date. (Tr. 14). While the ALJ did not find consistent objective evidence which supported some of Plaintiff's alleged conditions,[7] he determined that Plaintiff suffers from the following severe impairments: chronic pain syndrome, status post cervical surgery for degenerative disk disease, and spondylosis at C3-4 (*Id.*). After considering Plaintiff's testimony in light of her medical treatment history, the objective medical record, the Vocational Expert's opinion, and the opinions of Dr. Johnson and the medical expert, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F. R. Part 404, Subpart P, Appendix 1."[8] (Tr. 15, 21).

The ALJ relied upon the Vocational Expert's (VE) testimony to complete the five-step determination.[9] He found that although Plaintiff is unable to perform past relevant work, but she nevertheless retains the residual functional capacity (RFC) to occasionally lift 15 pounds and frequently lift 10 pounds; sit for 6 out of every 8 hours with a sit/stand option; stand for 4 out of every 8 hours but not longer than 40 minutes without resting; walk 2 out of every 8 hours but not longer than 40 minutes without resting; and occasionally navigate stairs, kneel, crouch, and bend, but not repeatedly. (Tr. 16, 21). To avoid "postural extension position of the cervical spine," she

---

[7] The ALJ did not find consistent documented evidence of constant diarrhea, irritable bowel syndrome, bone spurs, tendonitis of the feet, plantar warts, bunions, arthritis of the right hip, or pain in Plaintiff's shoulders. (Tr. 15).

[8] In making this determination, the ALJ gave "great weight to the opinions of Dr. Levine," but gave "little weight to the opinions of Dr. Morrow due to the inconsistency with the objective medical record, as discussed by Dr. Levine." (Tr. 20). He did not specify the exertional level of work to which Plaintiff would be limited.

[9] The VE determined that Plaintiff retained the RFC to reenter the workforce as a food and beverage order clerk, a surveillance systems monitor, or an eyeglass lens inserter. Each of these jobs is sedentary, unskilled with an "SVP: 2." (Tr. 52).

8

should not lift or reach above shoulder level. (Tr. 16). However, the ALJ found that Plaintiff has unlimited use of her "upper extremities for fine and gross manipulation." (*Id*.).

## IV. Plaintiff's Argument for Reversal

Plaintiff raises three issues on appeal: (1) the ALJ failed to properly consider the opinions and conclusions of Dr. Morrow, Plaintiff's treating physician (Pl.'s Mem. 24); (2) the ALJ failed to properly evaluate Plaintiff's credibility (Pl.'s Mem. 36); and (3) the ALJ posed an incomplete hypothetical question to the VE. (Pl.'s Mem. 43).

## V. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See*

*Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## VI.     Discussion

After careful review, the court concludes that the ALJ's findings are not supported by substantial evidence and this matter is due to be remanded.

### A.     The ALJ Failed to Properly Consider the Opinions and Conclusions of Dr. Morrow, Plaintiff's Treating Physician.

It is well established in the Eleventh Circuit that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, at 1140 (11th Cir. 1997), *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). However, good cause to discount a treating physician's opinion exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, at 1241 (11th Cir. 2004). Additionally, the ALJ "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

The Eleventh Circuit has added that the "reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1987). When a nonexamining physician's opinion contradicts the opinion of the treating physician, that opinion, in and of itself, is given little weight and does not constitute substantial evidence on its own. *Id*.

The ALJ erred in his decision when he chose to give little weight to Dr. Morrow's opinion. In coming to his determination, the ALJ gave "great weight" to the opinions of Dr. Levine, while dismissing Dr. Morrow's in little more than a paragraph. (Tr. 20). In making this error, the ALJ stated:

> The undersigned gives little weight to the opinions [of] Dr. Morrow due to the inconsistency with the objective medical record, **as discussed by Dr. Levine.** Dr. Levine referenced clinical and diagnostic evidence in describing the inconsistency of Dr. Morrow's opinions with the objective evidence, which the undersigned concurs. Dr. Morrow did not reference specific clinical findings in his opinion statements but seemed to rely quite heavily on the claimant's surgical history at her age.
>
> (Tr. 20) (emphasis added).

The ALJ viewed the evidence through the lens of Dr. Levine's testimony. He did not adequately explain or give specific examples as to why he chose to discount Dr. Morrow's opinions, other than the fact that Dr. Levine disagreed with him. For this procedural reason, the ALJ's decision should be remanded.

Even independent of the procedural error, good cause does not exist in this case to warrant the ALJ's failure to appropriately consider Dr. Morrow's opinion. First, the evidence supports Dr. Morrow's opinions. During each of the 25 to 30 visits Plaintiff made to Dr. Morrow, she complained of chronic back, joint, and neck pain. (Tr. 294-303, 339-346). Each time, Plaintiff ranked the pain as a 10 without medication, and a 7 or 8 with medication. (Tr. 294-298). Dr. Morrow also pointed to objective findings of muscle spasms to bolster his opinion that Plaintiff's pain affects her daily living and work activities. (Tr. 361).

Second, the evidence does not support a contrary finding. Even Dr. Levine, whose opinion the ALJ credited over Dr. Morrow's, found a host of medically determinable impairments related to Plaintiff's neck and back pain. (Tr. 42-44). He also agreed with Dr. Morrow that **all** of Plaintiff's conditions could be reasonably expected to cause her pain. (Tr. 48-

49, 370) (emphasis added), and further found no evidence that Plaintiff was a malingerer. (Tr. 49-50).

Finally, Dr. Morrow's opinions are not conclusory or inconsistent with his records. His treating record spanning more than 5 years provides a solid factual and medical foundation for his opinions. As Plaintiff's treating physician, Dr. Morrow's records consistently show that Plaintiff complained of chronic back, joint, and neck pain during each visit. (Tr. 294-303, 339-346). He described Plaintiff as a "tough" person that soldiered on through the pain after her three neck surgeries, until finally he advised her that she could no longer work. (Tr. 345, 368). Because Dr. Morrow's opinions were both well supported and consistent with the record, they were entitled to more deference than the ALJ accorded them. The ALJ erred and this case is due to be remanded.

### B. The ALJ Failed to Properly Evaluate Plaintiff's Credibility.

Because the ALJ evaluated Plaintiff's credibility and subjective pain complaints completely through the eyes of Dr. Levine, the validity of his credibility determinations necessarily hinge on whether good cause existed to discount Dr. Morrow's opinion. The court finds there was not good cause to reject Dr. Morrow's opinions.

In evaluating a claimant's credibility with regard to subjective symptomology, the Eleventh Circuit has established a three-part pain standard. The standard requires the claimant to show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1222 (11th Cir. 1991).

If the ALJ decides that the claimant has a medically determinable impairment that could reasonably cause the alleged symptoms, the ALJ then "evaluates the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work." 20 C.F.R. § 404.1529(a)-(c). During this evaluation, the ALJ must consider the entire record, including factors such as claimant's daily activities, medical signs and laboratory findings, and the statements of the claimant as well as other medical sources. 20 C.F.R. § 404.1529(c)(3). If the ALJ decides to not credit a claimant's pain testimony, "he must articulate explicit and adequate reasons for doing so." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987).

In this case, the ALJ found that although Plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 18). While the ALJ correctly articulated the pain standard, he did not review the record as a whole in evaluating the intensity and persistence of Plaintiff's pain. He considered Plaintiff's credibility only to the extent Dr. Levine considered it: "While Dr. Morrow's records document subjective pain complaints by the claimant, Dr. Levine testified that pain is a subjective phenomenon and cannot be quantified." (Tr. 19). The ALJ did not consider Dr. Morrow's objective findings (muscle spasms, MRI's) or his treatment records, showing that over a period of five years Plaintiff consistently complained of pain amounting to a ten without medication, and a seven or eight with medication. Most notably, the ALJ ignored that Plaintiff's condition was degenerative, meaning it would continually worsen over time, and that surgical intervention was not an option. (Tr. 307, 368).

The ALJ next pointed to Plaintiff's daily activities to discredit her testimony. However, as the courts have clarified, while an ALJ should consider daily activities in making credibility

findings, a claimant's "participation in everyday activities of short duration, such as housework or fishing, [does not] disqualify[y] a claimant from disability…" *Lewis*, 125 F.3d at 1441. "It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances." *Bennett v. Barnhart,* 288 F.Supp.2d 1246, 1252 (N.D.Ala.2003). In short, Plaintiff may not be penalized because of her ability to perform simple tasks around the house.  It is simply a single factor to consider in the disability analysis.

Finally, the ALJ disregarded the simple history and duration of Plaintiff's treatment. Plaintiff visited Dr. Morrow every one or two months for five years, consistently complaining of chronic back, joint, and neck pain. (Tr. 294-303, 339-346). Her "longitudinal" medical history is evidence of her constant attempts to ease her pain and is therefore entitled to the deference called for in SSR 96-7p, Medical Treatment History:

> Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medication, trials of a variety of treatment modalities in an attempt to find one that works or does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

Not only did the ALJ incorrectly evaluate Plaintiff's credibility, but he also failed to adequately explain his reasons for doing so. Again, particularly in light of the ALJ's error in discounting Dr. Morrow's opinion, it follows that this credibility determination is also suspect and due to be remanded.

### C.     The ALJ Posed an Incomplete Hypothetical to the Vocational Expert.

Lastly, Plaintiff argues that the hypothetical the ALJ posed to the VE was incomplete in that it didn't include all of Plaintiff's limitations. The ALJ framed the hypothetical within the "limitations as expressed by Dr. Levine," but the hypothetical did not include Plaintiff's need to lie down for several hours a day. (Tr. 52). Again, because the ALJ founded his hypothetical on

his previous decision to discount Dr. Morrow's opinion, the court cannot say that his findings in relation to the VE's opinion testimony are supported by substantial evidence.

For a VE's testimony to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). If the ALJ improperly discounted Dr. Morrow's opinions, the VE's testimony based on the incomplete hypothetical is not substantial evidence that Plaintiff could work other jobs in the national economy. In contrast, Plaintiff's attorney posed a complete hypothetical that included all of Plaintiff's limitations as laid out by Dr. Morrow. (Tr. 53). The VE responded that under these limitations, an individual would not be able to retain "gainful employment within the national economy." (*Id.*). Had Dr. Morrow's opinion been accorded proper deference, the ALJ's hypothetical posed to the VE would be considered incomplete. For this reason also, the ALJ's decision is due to be remanded.

### VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence and the proper legal standards were not applied in reaching this determination. The ALJ did not have good cause to discount Dr. Morrow's opinions, therefore his credibility determination of Plaintiff was not supported by substantial evidence and his hypothetical to the vocational expert was incomplete. The Commissioner's final decision is therefore due to be remanded. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 26, 2016.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE